George Haines, Esq.
Nevada Bar No. 9411
Gerardo Avalos, Esq.
Nevada Bar No. 15171
**FREEDOM LAW FIRM, LLC**
8985 South Eastern Ave., Suite 205
Las Vegas, NV 89123
ghaines@freedomlegalteam.com
gavalos@freedomlegalteam.com
Phone: (702) 880-5554
FAX: (702) 385-5518

Andrew W. Ferich (*pro hac vice* forthcoming)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SUSAN GEINER, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br>   v.<br><br>RED ROCK RESORTS, INC., STATION HOLDCO LLC, and STATION CASINOS LLC,<br><br>          Defendants. | Case No.:  2:26-cv-01632<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff Susan Geiner ("Plaintiff"), individually and on behalf of all similarly situated persons, alleges the following against Red Rock Resorts, Inc. ("Red Rock"), Station Holdco LLC ("Station Holdco"), and Station Casinos LLC ("Station Casinos") (collectively, "Defendants") based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation by Plaintiff's counsel and review of public documents as to all other matters:

## I.    INTRODUCTION

1.    Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard Plaintiff's and other similarly situated individuals' personally identifiable information ("PII" or "Private Information") from criminal hackers.

2.    Defendants collectively own and operate various Nevada-based hospitality and entertainment brands, including Station Casinos, Red Rock Resorts, Wildfire Gaming, and Seventy Six Taverns, which serve hundreds of thousands of customers a year. In the ordinary course of business, Defendants collect and store sensitive Private Information belonging to its customers and employees. In exchange for receiving services or employment, Defendants' customers and employees entrust Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants will safeguard their data from unauthorized access.

3.    Despite this reasonable expectation, on March 5, 2026, an external threat actor breached Defendants' systems, compromising the Private Information of Defendants' customers and employees ("Data Breach"). Contrary to the expectation of privacy, Class Members have now had their privacy jeopardized and their sensitive information exposed to unauthorized persons and the risk of fraud.

4.    Though little is known about the Data Breach at this time, what is known establishes that Defendants failed to implement reasonable cybersecurity measures. For example, the hackers were able to infiltrate Defendants' information systems, perform the necessary reconnaissance efforts, identify valuable files, gain access to those files, and download data without being caught.

1

CLASS ACTION COMPLAINT

The fact that the hackers could perform these overt, noisy operations without detection strongly suggests that Defendants failed to implement and maintain the necessary monitoring and alerting systems, including endpoint detection and response tools, sufficient to timely identify malicious activity and empower Defendants cybersecurity staff to stop or limit the attack.

5.     The potential for improper disclosure and theft of Plaintiff's and Class members' Private Information was a known risk to Defendants, and thus Defendants were on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

6.     Upon information and belief, Defendants failed to properly monitor and implement security practices with regard to the computer network and systems that housed the Private Information.

7.     The hospitality and gaming industries are a prime target for ransomware attacks such as this because these organizations store vast amounts of sensitive data, including SSNs, financial information, and personal identification details. This data is incredibly valuable on the black market, where it can be sold for purposes such as identity theft and fraud. The high demand for this data makes hotels and casinos a lucrative target for cybercriminals.

8.     Plaintiff's and Class members' identities are now at risk because of Defendants' conduct, as the Private Information that they collected and maintained is now in the hands of data thieves and other unauthorized third parties. Plaintiff and Class members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, diminution of the value of their Private Information, loss of privacy, and additional damages as described below.

9.     Plaintiff brings this class action lawsuit to address Defendants' inadequate safeguarding of Class members' Private Information that they collected and maintained, and their failure to provide timely and adequate notice to Plaintiff and Class members of the types of information that were accessed, and that such information was subject to unauthorized access by cybercriminals.

CLASS ACTION COMPLAINT

10. Plaintiff, individually and on behalf of the Class, asserts claims for (i) negligence; (ii) negligence per se; (iii) breach of implied contract; (iv) unjust enrichment; (v) invasion of privacy; and (vi) declaratory and injunctive relief.

## II. PARTIES

*Plaintiff*

11. Plaintiff is, and at all times mentioned herein, an individual resident of the State of Nevada, residing in Clark County, Nevada.

*Defendants*

12. Defendant Red Rock Resorts, Inc. is a corporation organized in the State of Delaware, with its principal place of business at 1505 S. Pavilion Center Drive in Las Vegas, Nevada 89135. Defendant Red Rock Resorts, Inc.'s registered agent is Station Casinos LLC, also located at 1505 S. Pavilion Center Drive in Las Vegas, Nevada 89135.

13. Defendant Station Casinos LLC is a limited liability company organized in the State of Nevada, with its principal place of business at 1505 S. Pavilion Center Drive in Las Vegas, Nevada 89135. Defendant Station Casinos LLC is its own registered agent.

14. Defendant Station Holdco LLC is a limited liability company organized in the State of Delaware, with its principal place of business at 1505 S. Pavilion Center Drive in Las Vegas, Nevada 89135. Defendant Station Holdco LLC's registered agent is Station Casinos LLC, also located at 1505 S. Pavilion Center Drive in Las Vegas, Nevada 89135.

## III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). There are at least 100 putative Class members, the aggregated claims of the individual Class members exceed the sum or value of $5,000,000 exclusive of interest and costs, and, upon information and belief, members of the proposed Class are citizens of states different from Defendants.

16. This Court has jurisdiction over Defendants through their business operations in this District, the specific nature of which occurs in this District. Defendants intentionally avail

themselves of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, and because Defendants reside in this judicial district.

## IV.    FACTUAL ALLEGATIONS
### A.    Defendants' Business and Collection of Plaintiff's and Class Members' Private Information

18.    Defendant Red Rock is a publicly traded corporation (NASDAQ: RRR) and the parent company to Defendants Station Casino and Station Holdco. Defendant Red Rock "owns all of the outstanding voting interests in Station LLC and has an indirect equity interest in Station LLC through its ownership of limited liability interests in Station Holdco LLC …, which owns all of the economic interests in Station LLC."[1]

19.    Defendant Station Casinos advertises itself as "the leading provider of gaming and entertainment in Las Vegas, Nevada," and that its "regional entertainment destinations and include various amenities, including numerous restaurants entertainment venues, movie theaters, bowling and convention/banquet space, as well as traditional casino gaming offerings such as video poker, slot machines, table games, bingo, and race and sports wagering."[2]

20.    Defendants design, develop, and operate integrated luxury resorts primarily in and around the Las Vegas area, focusing on hospitality, gaming, entertainment, retail, and dining. Defendants operate several major entertainment properties and subsidiaries including Wildfire Casino's locations, Durango Casino & Resort, Red Rock Resort Casino & Spa, Green Valley Ranch, Palace Station, Sunset Station, Boulder Station, Sante Fe Station, Barley's Casino & Brewery, and Seventy Six Taverns' locations, among others.[3] Defendants properties emphasize

---

[1] Red Rock Resorts, Inc., Annual Report (Form 10-K), filed May 7, 2026, https://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=320024851&type=PDF&symbol=RRR&cdn=95116e8a4f7178fe3ab03d564ac5d899&companyName=Red+Rock+Resorts+Inc.&formType=10-Q&dateFiled=2026-05-07.

[2] *About Station Casinos*, STATION CASINOS, https://stationcasinos.com/about-us/ (last visited May 27, 2026).

[3] *Casinos*, STATION CASINOS, https://stationcasinos.com/casinos/ (last visited May 27, 2026).

CLASS ACTION COMPLAINT

premium guest experiences with gaming as a core revenue driver via table games, slots, and loyalty programs like Station Casino's Boarding Pass Card.

21. As a core part of running their business, Defendants collect extensive PII and other sensitive data in connection with bookings, gaming, check-ins, credit extensions, loyalty rewards, security, and marketing. Collection occurs across online channels (websites, mobile apps), in-person at properties (check-ins, ID scans, gaming), and through third parties like travel agencies or analytics firms.

22. On information and belief, key categories include:

- **Basic Identifiers**: full name, email, physical address, phone number, date of birth, driver's license/passport numbers, Social Security number, vehicle details (e.g., license plates from valet).
- **Financial & Payment Data**: credit card info, payment details for bookings or casino credit.
- **Biometric & Surveillance**: CCTV footage, audio/video recordings in public areas, call recordings to concierge, location tracking via keycards or apps (precise GPS if enabled).
- **Behavioral & Commercial**: gaming activity, purchase history, survey responses on stays, internet usage (browsing patterns, clicks), social media profiles.

23. Defendants use this information for reservations, credit approvals, personalized offers, fraud prevention, security, and employment processes. As a condition of receiving services or employment, Defendants require that individuals entrust them with highly sensitive Private Information.

24. Defendants would be unable to engage in their regular business activities without collecting and aggregating Private Information they know and understand to be sensitive and confidential.

25. In their online Privacy Policy, Defendants states that they are "committed to providing excellent services to . . . customers, job applicants, and any third party from which Station collects information . . . , including respecting our Users' privacy rights and protecting our Users' data."[4]

---

[4] *Privacy Policy*, STATION CASINOS, https://stationcasinos.com/privacy-policy/ (last visited May 27, 2026).

CLASS ACTION COMPLAINT

26. Due to the highly sensitive and personal nature of the information Defendants acquire and store, Defendants also implicitly or explicitly promise to, among other things: keep Private Information private; comply with industry standards related to data security and the maintenance of their customers' and employees' Private Information; inform customers and employees of Defendants' legal duties relating to data security and comply with all federal and state laws protecting Private Information; only use and release Private Information for reasons that relate to the services they provide; and provide adequate notice if Private Information is disclosed without authorization.

27. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' Private Information, Defendants assumed legal and equitable duties owed to Plaintiff and Class members, and knew or should have known that Defendants were responsible for protecting Plaintiff's and Class members' Private Information from unauthorized disclosure and exfiltration.

28. Current and former customers and employees of Defendants made their Private Information available to Defendants with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from illegal and unauthorized access. They similarly expected that, in the event of any unauthorized access, these entities would provide them with prompt and accurate notice.

29. This expectation was objectively reasonable and based on obligations imposed on Defendants by statute, regulations, industrial custom, and standards of general due care.

30. Plaintiff and Class members relied on Defendants to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendants ultimately failed to do.

31. Unfortunately for Plaintiff and Class members, Defendants failed to carry out their duty to safeguard sensitive Private Information and provide adequate data security. As a result, Defendants failed to protect Plaintiff and Class members from having their Private Information accessed and stolen during the Data Breach.

CLASS ACTION COMPLAINT

### B.    The Data Breach

32.    On May 21, 2026, Defendants disclosed a cybersecurity breach when it submitted an official data breach notice to the Maine Attorney General's Office. In that filing, Defendants state that the Data Breach occurred on or about March 5, 2026.[5]

33.    Little information is available concerning the Data Breach, and Defendants have provided scant details about it.

34.    On information and belief, the information disclosed during the Data Breach includes at least some of the following information, and potentially other sensitive information: name, email address, physical address, phone number, date of birth, driver's license/passport numbers, vehicle details (e.g., license plates from valet), credit card information, Social Security numbers, tax information, payment details for bookings, and information related to casino credit.

35.    Upon information and belief, highly sensitive Private Information was accessed and acquired by cybercriminals during the Data Breach because that is the *modus operandi* of cybercriminals who perpetrate ransomware attacks against casinos, hotels, and other entities in the hospitality and gaming industries such as Defendants. As such, there is no question Plaintiff's and Class Members' Private Information is in the hands of cybercriminals who will use the stolen Private Information for nefarious purposes for the rest of their lives.

36.    To date, Defendants have failed to disclose crucial details, including: (i) the exact beginning and end date of the Data Breach (ii) the date(s) of Defendants' investigation; (iii) an explanation as to why Defendants allowed the Data Breach to occur, (iv) the root cause of the Data Breach, (v) the vulnerabilities exploited, (vi) the remedial measures undertaken to ensure such a breach does not occur again, (vii) the extent of the Data Breach and information that was accessed by the hackers, and (viii) the steps that victims of the Data Breach should take to protect themselves.

37.    To date, these critical facts have not been explained or clarified to Plaintiff and Class members, who retain a vested interest in ensuring that their Private Information is protected.

---

[5] Paulina Okunytė, *Las Vegas Giant Reveals Hacking Incident After System Breach*, CYBERNEWS (May 22, 2026), https://cybernews.com/security/station-casinos-data-breach-las-vegas-hacking/.

CLASS ACTION COMPLAINT

38.    Defendants offer no substantive steps to help victims like Plaintiff and Class members to protect themselves.

39.    Defendants had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

40.    Plaintiff and Class members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

41.    Defendants' data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

42.    Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

**C.    Defendants Failed to Protect Plaintiff's and Class Members' Private Information**

43.    Defendants collect and maintain vast quantities of Private Information as part of their normal operations. The Data Breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendants.

44.    First, Defendants failed to implement reasonable security protections to safeguard their information systems and databases.

45.    Second, Defendants failed to inform the public that their data security practices were deficient and inadequate. Had Plaintiff and Class members been aware that Defendants did not have adequate safeguards in place to protect such sensitive Private Information, they would have never provided their Private Information to Defendants.

46.    In addition to the failures that led to the successful Breach, Defendants' failings in handling the Breach and responding to the incident exacerbated the resulting harm to the Plaintiff and Class members.

8

CLASS ACTION COMPLAINT

47. Defendants' delay in informing victims of the Data Breach that their Private Information was compromised virtually ensures that the cybercriminals who stole this Private Information could monetize, misuse and/or disseminate that Private Information before the Plaintiff and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

48. Additionally, Defendants' failure to attempt to ameliorate the effects of this Data Breach and mitigate the harm they caused is woefully inadequate. Plaintiff's and Class members' Private Information was accessed and acquired by cybercriminals for the express purpose of misusing the data. As a consequence, they face a real, immediate, and likely danger of identity theft and misuse of their Private Information. And this can, and in some circumstances already has, caused irreparable harm to their personal, financial, reputational, and future well-being. This harm is even more acute because much of the stolen Private Information is immutable.

49. In short, Defendants' myriad failures, including the failure to timely detect an intrusion and failure to timely notify Plaintiff and Class members that their Private Information had been stolen due to Defendants' security failures, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiff's and Class members' Private Information for a significant amount of time, leaving victims unable to take proactive steps to defend themselves and mitigate the near- and long-term consequences of the Data Breach.

**D.** **Defendants Knew or Should Have Known of the Risk Because Institutions in Possession of Private Information are Susceptible to Cyberattacks**

50. Defendants' data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting entities that collect and store Private Information, like Defendants.

51. Data thieves regularly target casinos, hotels, and resorts, like Defendants, due to the highly sensitive information in their custody. Defendants knew and understood that

9

unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

52.     In 2025, a record 3,322 data breaches occurred, resulting in approximately 278.8 million individuals being compromised.[6]

53.     As a custodian of Private Information, Defendants knew, or should have known, the importance of safeguarding the Private Information entrusted to them by Plaintiff and Class members, and of the foreseeable consequences if Defendants' data security systems were breached, including the significant costs imposed on Plaintiff and Class members as a result of a breach.

54.     Despite the prevalence of public announcements of data breaches and data security compromises, Defendants failed to take appropriate steps to protect the Private Information of Plaintiff and Class members from being compromised.

55.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' server(s) – amounting to potentially hundreds of thousands or millions of individuals' detailed, Private Information – and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

56.     The injuries to Plaintiff and Class members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class members.

57.     The ramifications of Defendants' failure to keep secure the Private Information of Plaintiff and Class members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

---

[6] *ITRC 2025 Data Breach Report – Key Findings and Solutions*, https://www.idtheftcenter.org/wp-content/uploads/2026/01/2025-ITRC-Annual-Data-Breach-Report.pdf (last visited Feb. 24, 2026).

CLASS ACTION COMPLAINT

**E.    Private Information is Valuable, and the Effects of Theft are Serious**

58.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[7]

59.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[8] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[9]

60.    Private Information is of great value to hackers and cybercriminals, and the data allegedly and likely compromised in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiff and Class members and to profit off their misfortune.

61.    The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[10]

62.    Private Information can be sold hundreds of dollars.[11] Criminals can also purchase access to entire company data breaches for as much as $4,500.[12]

63.    Private Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.

---

[7] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (last visited Feb. 24, 2026).

[8] 17 C.F.R. § 248.201 (2013).

[9] *Id.*

[10] *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[11] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[12] *In the Dark*, VPNOVERVIEW, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Feb. 24, 2026).

11

CLASS ACTION COMPLAINT

64.    The Data Breach at issue here was targeted and financially motivated, as the only reason cybercriminals go through the trouble of hacking casino and resort operators like Defendants is to steal the highly sensitive information they maintain, which can be exploited and sold for use in the kinds of criminal activity described herein.

65.    Based on the foregoing, the information potentially compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information apparently compromised in this Data Breach—which appears to include Social Security numbers—is impossible to "close" and difficult, if not impossible, to change.

66.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[13]

67.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

68.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

[13] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.
[14] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

CLASS ACTION COMPLAINT

69.     Hackers may not use the information right away, but this does not mean it will not be used. The U.S. Government Accountability Office's study regarding data breaches further stated:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

70.     Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.

71.     The full scope of the harm resulting from the Data Breach has yet to be realized. There may be a time lag between when harm occurs and when it is discovered, and also between when Private Information is stolen and when it is used.

72.     Plaintiff and Class members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Defendants' negligence.

73.     Furthermore, identity monitoring services only alert someone to the fact that they have already been the victim of identity theft—they do not prevent identity theft.

74.     Nor can an identity monitoring service remove Private Information from the dark web.[15]

75.     "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[16]

76.     As a direct and proximate result of the Data Breach, Plaintiff and the Class have been damaged and placed at an imminent and continuing increased risk of harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and

---

[15] *Dark Web Monitoring: What You Should Know*, CONSUMER FED'N OF AM. (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.
[16] *Id.*

CLASS ACTION COMPLAINT

"alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and medical records for unauthorized activity for years to come.

77.    Even more serious is the identity restoration that Plaintiff and other Class members must go through, which can require spending countless hours filing police reports, filling out IRS forms, completing Federal Trade Commission checklists and Department of Motor Vehicle driver's license replacement applications, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps Plaintiff and the Class must take.

78.    Plaintiff and the Class have or will experience the following concrete and particularized harms for which they are entitled to compensation, including:

    a.   Actual identity theft;

    b.   Trespass, damage to, and theft of their personal property, including their Private Information;

    c.   Improper disclosure and theft of their Private Information;

    d.   The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

    e.   Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cybercriminals have their Private Information;

    f.   Ascertainable losses in the form of time taken to respond to identity theft, including lost opportunities and lost wages from uncompensated time off from work;

    g.   Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

    h.   Ascertainable losses in the form of diminution of the value of Plaintiff's and Class members' Private Information, for which there is a well-established and quantifiable national and international market;

    i.   The loss of use of and access to their credit, accounts, and/or funds;

14

CLASS ACTION COMPLAINT

j.   Damage to their credit due to fraudulent use of their Private Information; and/or

k.   Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

79.    Moreover, Plaintiff and Class members have an interest in ensuring that their Private Information, which remains in the possession of Defendants, is protected from further breaches through the implementation of industry standard security measures and safeguards. Defendants have shown themselves wholly incapable of protecting Plaintiff's and Class members' Private Information.

80.    Plaintiff's and Class members also have an interest in ensuring that their Private Information is removed from all of Defendants' servers, systems, and files.

81.    Upon information and belief, given the kind of Private Information Defendants made accessible to hackers, Plaintiff and the Class are certain to incur additional damages.

82.    Upon information and belief, because identity thieves possess their Private Information, Plaintiff and Class members will need to have identity theft monitoring protection for the rest of their lives.

83.    None of this should have happened because the Data Breach was entirely preventable.

**F.    Defendants had a Duty to Protect Private Information Under the Law and the Applicable Standard of Care**

84.    By providing hospitality and gaming services, employment, and collecting Private Information from Plaintiff and Class members as a condition of those services and employment, Defendants assumed a duty to safeguard that information from unauthorized access or disclosure.

85.    Defendants were prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), from engaging in "unfair or deceptive acts or practices in or affecting commerce[.]" The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in

15
CLASS ACTION COMPLAINT

violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

86.    Defendants are further required by various states' laws and regulations to protect Plaintiff's and Class members' Private Information.

87.    Defendants, as data collectors, were required by The Nevada Privacy of Information Collected on the Internet from Consumers Act, Nev. Rev. Stat. § 603A ("NPICICA"), to "implement and maintain reasonable security measures to protect those [Private Information] records from unauthorized access, acquisition, destruction, use, modification, or disclosure." Nev. Rev. Stat. § 603A.210.

88.    Defendants owed a duty to Plaintiff and the Class to design, maintain, and test their systems to ensure that the Private Information in their possession and control was adequately secured and protected.

89.    Defendants owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Private Information in their possession, including adequately training their employees (and any others who accessed Private Information within their computer systems) on how to adequately protect Private Information.

90.    Defendants owed a duty to Plaintiff and the Class to implement processes that would detect a breach of their data security systems in a timely manner.

91.    Defendants owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

92.    Defendants owed a duty to Plaintiff and the Class to adequately train and supervise their employees to identify and avoid any phishing emails that make it past their email filtering service.

93.    Defendants owed a duty to Plaintiff and the Class to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in individuals' decisions to entrust Defendants with their Private Information.

CLASS ACTION COMPLAINT

94.    Defendants owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

95.    Defendants owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

96.    Because Defendants collected and stored sensitive Private Information, they were required to comply with federal laws HITECH and the FTC Act, as well as applicable state laws. It was also expected to follow regulatory guidance and implement reasonable safeguards consistent with standards issued by agencies like the FTC, FBI, CISA, and industry standards.

## G.    Defendants Failed to Comply with FTC Guidelines

97.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTCA, 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

98.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

99.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the

17

CLASS ACTION COMPLAINT

network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

100.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

101.    As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of their data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

102.    Defendants were at all times fully aware of their obligation to protect the Private Information of consumers under the FTCA, yet failed to comply with such obligations. Defendants were also aware of the significant repercussions that would result from their failure to do so. Accordingly, Defendants' conduct was particularly unreasonable given the nature and amount of Private Information they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**H.    Defendants Failed to Follow FBI Guidelines**

103.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."

104.    To prevent and detect the Breach, Defendants could and should have taken, as recommended by the Federal Bureau of Investigation, the following measures:

a.    Implemented an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

b.    Enabled strong spam filters to prevent phishing emails from reaching the end users

18

CLASS ACTION COMPLAINT

and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

c. Scanned all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

d. Configured firewalls to block access to known malicious IP addresses.

e. Patched operating systems, software, and firmware on devices. Consider using a centralized patch management system.

f. Set anti-virus and anti-malware programs to conduct regular scans automatically.

g. Managed the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

h. Configured access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

i. Disabled macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

j. Implemented Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

k. Considered disabling Remote Desktop protocol (RDP) if it is not being used.

l. Used application whitelisting, which only allows systems to execute programs known and permitted by security policy.

m. Executed operating system environments or specific programs in a virtualized environment.

19

CLASS ACTION COMPLAINT

n. Categorized data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

105. Upon information and belief, Defendants failed to do any of the above.

**I.      Defendants Failed to Follow CISA Guidelines**

106. The United States Cybersecurity & Infrastructure Security Agency, recommends the following actions to prevent ransomware:

a. **Update and patch your computer.** Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks.

b. **Use caution with links and when entering website addresses.** Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net).

c. **Open email attachments with caution.** Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

d. **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it.

e. **Verify email senders.** If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on

20

CLASS ACTION COMPLAINT

any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

f. **Inform yourself.** Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

g. **Use and maintain preventative software programs.** Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic.[17]

107. Defendants could have and should have taken the above measures to prevent the breach. Upon information and belief, Defendants failed to do any of the above.

**J.    Defendants Failed to Comply with Industry Standards**

108. Experts studying cybersecurity routinely identify casino and resort operators like Defendants as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

109. Some industry best practices that should be implemented by institutions dealing with sensitive Private Information, like Defendants, include, but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

110. Other best cybersecurity practices that are standard amongst companies in industries that store Private Information include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management

---

[17] *See Protecting Against Ransomware*, CYBERSECURITY & INFRASTRUCTURE SECURITY AGENCY (revised Sept. 2, 2021), https://www.cisa.gov/news-events/news/protecting-against-ransomware (internal citations omitted).

CLASS ACTION COMPLAINT

systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

111.    Defendants failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of: the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04); the NIST Special Publications 800-53, 53A, or 800-171; the Center for Internet Security's Critical Security Controls (CIS CSC); and the Federal Risk and Authorization Management Program (FEDRAMP). All of these are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class members' Private Information, resulting in the Data Breach.

112.    Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**K.    Defendants Breached Their Duty to Safeguard Plaintiff's and Class Members' Private Information**

113.    In addition to their obligations under federal laws, Defendants owed duties to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected the Private Information of Class members.

114.    Defendants breached their obligations to Plaintiff and Class members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data and failed to audit, monitor, or ensure the integrity of their data security

22

CLASS ACTION COMPLAINT

practices. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect customers' and/or employees' Private Information;

c. Failing to properly monitor their own data security systems for existing intrusions;

d. Failing to adhere to industry standards for cybersecurity as discussed above; and

e. Otherwise breaching their duties and obligations to protect Plaintiff's and Class members' Private Information.

115. Defendants negligently and unlawfully failed to safeguard Plaintiff's and Class members' Private Information by allowing cyberthieves to access their computer network and systems, which contained unsecured and unencrypted Private Information.

116. Had Defendants remedied the deficiencies in their information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, they could have prevented intrusion into their information storage and security systems and, ultimately, the theft of Plaintiff's and Class members' confidential Private Information.

**L.    Plaintiff and Class Members Suffered Common Injuries and Damages**

117. As a result of Defendants' ineffective and inadequate data security practices that led to the Data Breach as well as the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class members has materialized and is imminent, and Plaintiff and Class members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); (d) diminution of value of their Private Information; and (e) the continued risk to their Private Information, which remains in the possession of Defendants, and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and Class members' Private Information.

CLASS ACTION COMPLAINT

***Increased and Imminent Risk of Identity Theft***

118.    Plaintiff and Class members are at a heightened risk of identity theft for years to come as a result of the Data Breach.

119.    The unencrypted Private Information of Class members will end up for sale on the dark web because that is the *modus operandi* of cybercriminals that commit attacks of this type. In addition, unencrypted Private Information may fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class members. Unauthorized individuals can easily access the Private Information of Plaintiff and Class members.

120.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

121.    Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity—or track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

122.    For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches can be the starting point for these additional targeted attacks on the victim.

24

CLASS ACTION COMPLAINT

123. One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[18]

124. With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

125. The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

### Loss of Time to Mitigate Risk of Identity Theft and Fraud

126. As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports

---

[18] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See*, *e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, KREBS ON SECURITY (Sept. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

25

CLASS ACTION COMPLAINT

could expose the individual to greater financial harm—yet, the resource and asset of time has been lost.

127.    The need to spend time mitigating the risk of harm is especially important in cases like this where Plaintiff's and Class members' Private Information is affected because such information is commonly used to commit fraud.

128.    By spending this time, Plaintiff is not manufacturing their own harm but taking necessary steps at Defendants' direction and because the Data Breach included Plaintiff's Private Information.

129.    Plaintiff and Class members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Breach, such as contacting credit bureaus to place freezes on their accounts; changing passwords and re-securing their own computer networks; and checking their financial accounts statements for any indication of fraudulent activity, which may take years to detect.

130.    These efforts are consistent with the U.S. Government Accountability Office's 2007 report regarding data breaches ("GAO Report"), in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[19]

131.    These efforts are also consistent with the steps that the FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[20]

---

[19] *See Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown,* U.S. GOV'T ACCOUNTABILITY OFF., GAO-07-737 (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[20] *See Identity Theft.gov*, FED. TRADE COMM'N, https://www.identitytheft.gov/Steps (last visited June 3, 2025).

26

CLASS ACTION COMPLAINT

*Diminished Value of Private Information*

132.    PII is a valuable property right.[21] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates beyond a doubt that Private Information has considerable market value.

133.    An active and robust legitimate marketplace for Private Information exists. In 2019, the data brokering industry was worth roughly $200 billion.[22]

134.    In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[23]

135.    Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[24]

136.    As a result of the Data Breach, Plaintiff's and Class members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

137.    At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class members, and of the foreseeable consequences that would occur if their data security systems were breached, including,

---

[21] *See, e.g.*, John T. Soma et al*., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[22] David Lazarus, *Shadowy Data Brokers Make the Most of Their Invisibility Cloak,* LOS ANGELES TIMES (Nov. 5, 2019), https://www.latimes.com/business/story/2019-11-05/column-data-brokers.

[23] DATACOUP, https://datacoup.com/ (last visited Feb. 24, 2026).

[24] *Frequently Asked Questions*, NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Feb. 24, 2026).

27

CLASS ACTION COMPLAINT

specifically, the significant costs that would be imposed on Plaintiff and Class members as a result of a breach.

138.    Defendants were, or should have been, fully aware of the unique type and the significant volume of data on their network, which upon information and belief, amounts to hundreds of thousands or millions of individuals' Private Information, and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

139.    The injuries to Plaintiff and Class members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class members.

***The Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary***

140.    Given the type of targeted attack in this case and sophisticated criminal activity, the type of Private Information involved, and the volume of data obtained in the Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes.

141.    Even if the Private Information is not posted online, these data sets are ordinarily sold and transferred through private Telegram channels wherein thousands of cybercriminals participate in a market for such data so that they can misuse it and earn money from financial fraud and identity theft of data breach victims.

142.    Such fraud may go undetected for years; consequently, Plaintiff and Class members are at a present and continuous risk of fraud and identity theft for many years into the future.

143.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is reasonable and necessary cost to monitor to protect Class members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class members would not need to bear but for Defendants' failure to safeguard their Private Information.

CLASS ACTION COMPLAINT

**M.    Plaintiff's Experience**

144.    Plaintiff is a former employee and current customer of Defendants and provided Private Information to Defendants as a condition of receiving employment and services from Defendants.

145.    Plaintiff values the privacy and security of Private Information and has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

146.    Plaintiff reasonably believed that Plaintiff's Private Information would be protected, and that Defendants would implement and maintain reasonable data security measures to safeguard it from unauthorized access, use, or disclosure.

147.    Had Plaintiff known that Defendants do not adequately protect Private Information, Plaintiff would not have agreed to provide Defendants with Private Information.

148.    At the time of the Data Breach, Defendants retained Plaintiff's Private information in their systems.

149.    Upon information and belief, Plaintiff's Private Information was compromised in the Data Breach and stolen by unauthorized individuals who unlawfully accessed Defendants' network to obtain the sensitive Private Information.

150.    Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff will need to maintain heightened measures for years, and possibly for life.

151.    As a result of the Data Breach, Plaintiff has suffered loss of time, interference, and inconvenience, as well as anxiety and emotional distress related to the increased risk of identity theft and loss of privacy.

152.    Plaintiff has suffered imminent and impending injury from the substantially heightened risk of identity theft, fraud, and misuse resulting from the exposure of Plaintiff's Private Information in the Data Breach.

153.    Plaintiff has suffered actual injury from having Private Information compromised as a result of the Data Breach, including but not limited to: (a) lost time and money related to

29

monitoring accounts and credit reports for fraudulent activity; (b) loss of privacy due to Plaintiff's Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of Plaintiff's bargain because Defendants did not adequately protect Private Information; (d) emotional distress because identity thieves now possess Plaintiff's Private Information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that Plaintiff's Private Information has likely been stolen and published on the dark web; (f) diminution in the value of Plaintiff's Private Information, a form of intangible property that Defendants obtained from Plaintiff; and (g) other economic and non-economic harm.

154.    Plaintiff has taken reasonable steps to mitigate the impact of the Data Breach, including researching the data breach, reviewing credit reports, monitoring accounts, disputing fraudulent charges, and taking steps to prevent further harm. Plaintiff anticipates spending hours dealing with the Data Breach, valuable time Plaintiff would rather spend on other activities, including, but not limited to, work and recreation. This is time that will be lost forever and cannot be recaptured.

155.    Plaintiff has a continuing interest in ensuring that Plaintiff's Private Information, which, upon information and belief, remains in the possession of Defendants, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff's Private Information will be wholly unprotected and at-risk of future data breaches.

## V.    CLASS ACTION ALLEGATIONS

156.    Plaintiff brings this action individually, and on behalf of all members of the following Nationwide Class of similarly situated persons:

> All living persons residing in the United States whose Private Information was compromised in the Data Breach, including everyone who received a notice letter from Defendants.

157.    Excluded from the Class are Defendants Red Rock, Station, and Station Holdco, as well as their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and

CLASS ACTION COMPLAINT

assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

158.    Plaintiff reserves the right to modify or amend the definitions of the proposed Classes, before the Court determines whether certification is appropriate.

159.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

160.    Numerosity. The Class members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class members are unknown at this time, based on information and belief, the Class consists of tens or hundreds of thousands of individuals who are geographically dispersed, including in states beyond Nevada, whose data was compromised in the Data Breach. The identities of Class members are ascertainable through Defendants' records, Class members' records, publication notice, self-identification, and other means.

161.    Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

        a.   Whether Defendants engaged in the conduct alleged herein;

        b.   Whether Defendants' conduct violated the FTCA;

        c.   When Defendants learned of the Data Breach;

        d.   Whether Defendants' response to the Data Breach was adequate;

        e.   Whether Defendants unlawfully lost or disclosed Plaintiff's and Class members' Private Information;

        f.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

31

CLASS ACTION COMPLAINT

g. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

i. Whether Defendants owed a duty to Class members to safeguard their Private Information;

j. Whether Defendants breached their duty to Class members to safeguard their Private Information;

k. Whether hackers obtained Class members' Private Information via the Data Breach;

l. Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class members;

m. Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

n. Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

o. What damages Plaintiff and Class members suffered as a result of Defendants' misconduct;

p. Whether Plaintiff and Class members are entitled to actual and/or statutory damages;

q. Whether Plaintiff and Class members are entitled to credit or identity monitoring and monetary relief; and

r. Whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

162.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of all other Class members. Individual

32

CLASS ACTION COMPLAINT

questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

163. <u>Typicality</u>. Plaintiff's claims are typical of those of other Class members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class members because, *inter alia*, all Class members were injured through the common misconduct of Defendants. Plaintiff is advancing the same claims and legal theories individually and on behalf of all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class members arise from the same operative facts and are based on the same legal theories.

164. <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff's counsel are competent and experienced in litigating class actions, including data privacy litigation of this kind.

165. <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiff and Class members in that all of Plaintiff's and Class members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendants' conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

166. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management

CLASS ACTION COMPLAINT

difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

167. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendants have acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

168. Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses and/or email addresses of Class members affected by the Data Breach. Class members have already been preliminarily identified and sent notice of the Data Breach by Defendants.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

169. Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

170. Defendants knowingly collected, came into possession of, and maintained Plaintiff's and Class members' Private Information.

171. Upon accepting and storing Plaintiff's and Class members' Private Information on their computer systems and networks, Defendants undertook and owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Plaintiff's and Class member's Private Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

172. Defendants owed a duty of care to Plaintiff and Class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the Private Information.

34
CLASS ACTION COMPLAINT

173. Defendants' duty also included the responsibility to implement processes by which they could detect and analyze a breach of their security systems in a reasonably expeditious period of time, and give prompt notice to those affected in the event of a cyberattack.

174. Defendants knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class members and the importance of adequate security. Defendants were on notice because, on information and belief, they knew or should have known that they would be an attractive target for cyberattacks.

175. Defendants owed a duty of care to Plaintiff and Class members whose Private Information was entrusted to them. Defendants' duties included, but were not limited to, the following:

   a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

   b. to exercise reasonable care in designing, implementing, maintaining, monitoring, and testing their networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class members' Private Information was adequately secured from impermissible release, disclosure, and publication;

   c. To protect its customers' and employees' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

   d. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

   e. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class members pursuant to the FTCA;

   f. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

35

CLASS ACTION COMPLAINT

g.  To promptly notify Plaintiff and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

176.  Defendants' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

177.  Defendants' duty also arose because Defendants were bound by industry standards to protect their customers' and employees' confidential Private Information.

178.  Plaintiff and Class members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendants owed them a duty of care to not subject them to an unreasonable risk of harm.

179.  Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class members' Private Information within Defendants' possession.

180.  Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class members.

181.  Defendants, by their actions and/or omissions, breached their duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

182.  Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information;

b.  Failing to adequately monitor the security of their networks and systems;

36
CLASS ACTION COMPLAINT

c. Failing to periodically ensure that their email system maintained reasonable data security safeguards;

d. Failing to implement and maintain adequate mitigation policies and procedures;

e. Allowing unauthorized access to Class members' Private Information;

f. Failing to comply with the FTCA; and

g. Failing to timely notify Class members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

183. Defendants acted with reckless disregard for the rights of Plaintiff and Class members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiff and Class members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

184. Defendants had a special relationship with Plaintiff and Class members. Plaintiff's and Class members' willingness to entrust Defendants with their Private Information was predicated on the understanding that Defendants would take adequate security precautions. Moreover, only Defendants had the ability to protect Defendants' systems (and the Private Information stored on them) from attack.

185. Defendants' breach of duties owed to Plaintiff and Class members caused Plaintiff's and Class members' Private Information to be compromised, exfiltrated, and misused, as alleged herein.

186. As a result of Defendants' ongoing failure to notify Plaintiff and Class members regarding exactly what Private Information has been compromised, Plaintiff and Class members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

187. Defendants' breaches of duty also caused a substantial, imminent risk to Plaintiff and Class members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

188. As a result of Defendants' negligence in breach of Defendants duties owed to Plaintiff and Class members, Plaintiff and Class members are in danger of imminent harm in that

37

their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

189.   Defendants also had independent duties under state laws that required them to reasonably safeguard Plaintiff's and Class members' Private Information and promptly notify them about the Data Breach.

190.   As a direct and proximate result of Defendants' conduct, including, but not limited to, Defendants' failure to implement and maintain reasonable data security practices and procedures, Plaintiff and Class members have suffered or will suffer injury and damages, including, but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost time and opportunity costs associated with efforts expended to address and mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from fraud and identity theft; (v) costs associated with placing freezes on credit reports and password protections; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives. Thus, Plaintiff and the Class are entitled to damages in an amount to be proven at trial.

191.   The injury and harm that Plaintiff and Class members suffered was reasonably foreseeable.

CLASS ACTION COMPLAINT

192.    Plaintiff and Class members have suffered cognizable injuries and are entitled to actual and punitive damages in an amount to be proven at trial.

193.    In addition to monetary relief, Plaintiff and Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

**<u>COUNT II</u>**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and the Nationwide Class)**

194.    Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

195.    Pursuant to Section 5 of the FTCA, Defendants had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class members.

196.    Pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq*., Defendants had a duty to implement reasonable safeguards to protect Plaintiff's and Class members' Private Information.

197.    Pursuant to Nev. Rev. Stat. § 603A.210, data collectors, such as Defendants, have a duty to implement reasonable security measures in order to protect Private Information "from unauthorized access, acquisition, destruction, use, modification, or disclosure."

198.    Pursuant to Nev. Rev. Stat. § 603A.220, data collectors, such as Defendants, have a duty to "notify Nevada residents of any data breach "in the most expedient time possible and without unreasonable delay."

199.    Plaintiff and Class members are within the class of persons that the FTCA and NPICICA intended to protect, and Defendants' failure to comply with both constitutes negligence per se.

200.    Defendants breached their duties to Plaintiff and Class members under the FTCA and NPICICA by failing to provide fair, reasonable, or adequate computer systems and data

security practices to safeguard Plaintiff's and Class members' Private Information, and by failing to provide prompt notice of the Data Breach without unreasonable delay.

201. Specifically, Defendants breached their duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

202. The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of Defendants' duty in this regard.

203. Defendants also violated the FTCA and NPICICA by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

204. Defendants' violations of the FTCA and NPICICA each constitute as negligence per se.

205. It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiff's and Class members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendants' networks, databases, and computers that stored Plaintiff's and Class members' unencrypted Private Information.

206. Plaintiff's and Class members' Private Information constitutes personal property that was stolen due to Defendants' negligence, resulting in harm, injury, and damages to Plaintiff and Class members.

207. As a direct and proximate result of Defendants' negligence per se, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the actual misuse

40

CLASS ACTION COMPLAINT

of their Private Information and the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

208. As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

209. In addition to monetary relief, Plaintiff and Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

## COUNT III
### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Nationwide Class)

210. Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

211. Defendants provides services and/or employment to Plaintiff and Class members. Plaintiff and Class members formed an implied contract with Defendants regarding the provision of those services and employment through their collective conduct, including by entrusting their valuable Private Information to Defendants in exchange for services and/or employment.

212. Through Defendants' sale of services and employment, Defendants knew or should have known that they must protect Plaintiff's and Class members' confidential Private Information in accordance with their policies, practices, and applicable law.

213. As consideration, Plaintiff and Class members paid money to Defendants and/or turned over valuable Private Information to Defendants. Accordingly, Plaintiff and Class members bargained with Defendants to securely maintain and store their Private Information.

214. Defendants accepted payment and/or possession of Plaintiff's and Class members' Private Information for the purpose of providing services and/or employment to Plaintiff and Class members.

41

CLASS ACTION COMPLAINT

215.    In paying Defendants and/or providing their valuable Private Information to Defendants in exchange for Defendants' services and/or employment, Plaintiff and Class members intended and understood that Defendants would adequately safeguard that Private Information as part of those services and that employment.

216.    Defendants' implied promises to Plaintiff and Class members include, but are not limited to: (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of Defendants employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with industry standards to make sure that Plaintiff's and Class members' PII would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

217.    Plaintiff and Class members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

218.    Had Defendants disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and Class members would not have provided their Private Information to Defendants.

219.    As a provider of hospitality and casino services, Defendants recognized (or should have recognized) that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and the other Class members.

220.    Defendants violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class members' Private Information.

221.    Defendants further breached the implied contracts with Plaintiff and Class members by otherwise failing to safeguard Plaintiff's and Class members' PII.

CLASS ACTION COMPLAINT

222. A meeting of the minds occurred, as Plaintiff and Class members agreed, *inter alia*, to provide payment and/or accurate and complete Private Information to Defendants in exchange for Defendants' agreement to, *inter alia*, provide services and/or employment that included protection of their highly sensitive Private Information.

223. Plaintiff and Class members have been damaged by Defendants' conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

224. Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

225. This Count is pleaded in the alternative to Plaintiff's current and future contract-based claims.

226. Plaintiff and Class members conferred a monetary benefit on Defendants by purchasing services from and/or providing labor to Defendants, along with their Private Information. In exchange, Plaintiff and Class members expected that Defendants would implement and maintain adequate and industry-standard data security protections for their sensitive Private Information.

227. Defendants have retained the benefits of their unlawful conduct by calculating to increase their own profit at the expense of adequate and necessary cybersecurity for Plaintiff's and Class members' sensitive Private Information.

228. Defendants knew that Plaintiff and Class members conferred a benefit upon them in the form of payments for Defendants' services and/or labor, which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiff and Class members for business purposes, while failing to fund adequate data security measures that would have secured Plaintiff's and Class members' Private Information and prevented the Data Breach.

43
CLASS ACTION COMPLAINT

229.    If Plaintiff and Class members had known that Defendants had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

230.    Due to Defendants' conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefit of their wrongful conduct.

231.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' Private Information.

232.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to increase their own profits at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite data security.

233.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

234.   Plaintiff and Class members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class members may seek restitution or compensation.

235.   Plaintiff and Class members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT V
## INVASION OF PRIVACY
### (On Behalf of Plaintiff and the Nationwide Class)

236.   Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

237.   Plaintiff and Class members took reasonable and appropriate steps to keep their Private Information confidential from the public.

238.   Plaintiff's and Class members' efforts to safeguard their own Private Information were successful, as their Private Information was not known to the public prior to the Data Breach.

239.   Plaintiff and Class members had a legitimate expectation of privacy to their Private Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

240.   Defendants owed a duty to individuals, including Plaintiff and the proposed Class members, to keep their Private Information confidential.

241.   The unauthorized release of Private Information is highly offensive to any reasonable person.

242.   Plaintiff's and Class members' Private Information is not of legitimate concern to the public.

243.   Defendants knew or should have known that Plaintiff's and Class members' Private Information was private.

45

CLASS ACTION COMPLAINT

244. Defendants publicized Plaintiff's and Class members' Private Information by communicating it to cybercriminals who had no legitimate interest in this Private Information and who had the express purpose of monetizing that information by injecting it into the illicit stream of commerce flowing through the dark web and other malicious channels of communication (e.g., Telegram and Signal).

245. It is therefore substantially certain that the Plaintiff's and the Class members' Private Information is rapidly becoming public knowledge–among the community writ large–due to the nature of the malware attack that procured it, and the identity theft that it is designed for.

246. Moreover, because of the ubiquitous nature of data breaches, Defendants were substantially certain that a failure to protect Private Information would lead to its disclosure to unauthorized third parties, including the thousands of waiting identity thieves who are in a special relationship to Plaintiff and the proposed Class members—in that those identity thieves are precisely the individuals whose aim it is to misuse such Private Information.

247. Therefore, by failing to keep Plaintiff's and Class members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, Defendants invaded Plaintiff's and Class members' privacy by:

      a. Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

      b. Publicizing private facts about Plaintiff and Class members, which is highly offensive to a reasonable person.

248. Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class members in that Defendants' inadequate data security measures will likely result in additional data breaches. Plaintiff and Class members have no adequate remedy at law for the injuries that they will sustain in that a judgment for monetary damages will not prevent further invasions of the Plaintiff's and Class members' privacy by Defendants.

CLASS ACTION COMPLAINT

## COUNT VI
### DECLARATORY AND INJUNCTIVE RELIEF, 28 U.S.C. § 2201
**(On Behalf of Plaintiff and the Nationwide Class)**

249.     Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

250.     This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

251.     As previously alleged, Defendants were required to provide adequate security for the protection of the Private Information Defendants collected.

252.     Defendants owe a duty of care to Plaintiff and Class members that required Defendants to adequately secure Plaintiff's and Class members' Private Information.

253.     Defendants still possess Plaintiff's and Class members' Private Information, yet do not adequately protect it against the threat of another data breach.

254.     Defendants have not satisfied their contractual obligations and legal duties to Plaintiff and Class members.

255.     Actual harm has arisen in the wake of the Data Breach regarding Defendants' obligations and duties of care to provide security measures to Plaintiff and Class members. Further, Plaintiff and Class members are at risk of additional or further harm due to the exposure of their Private Information and Defendants' ongoing failure to address the security failings that led to such exposure.

256.     Since the Data Breach, Defendants have not announced any changes to their data security infrastructure, processes or procedures to fix the vulnerabilities in their computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks.

257.     There is no reason to believe that Defendants' employee training and security measures are any more adequate now than they were before the Data Breach.

258.     Plaintiff, therefore, seek a declaration (1) that Defendants' existing data security measures do not comply with their contractual obligations and duties of care to provide adequate data security, and (2) that to comply with Defendants obligations and duties of care, Defendants

47

must implement and maintain reasonable security measures, including, but not limited to, being ordered as follows:

    a.  prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    b.  ordering that Defendants engage internal security personnel to conduct testing, including audits on Defendants' systems, on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

    c.  requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

    d.  ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

    e.  ordering that Defendants audit, test, and train security personnel and employees regarding any new or modified data security policies and procedures;

    f.  ordering that Defendants purge, delete, and destroy, in a reasonably secure manner, any Private Information not necessary for provision of services;

    g.  ordering that Defendants conduct regular database scanning and security checks;

    h.  prohibiting Defendants from maintaining the Private Information of Plaintiff and Class members on a cloud-based database;

    i.  requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

    j.  ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive Private Information;

CLASS ACTION COMPLAINT

k. requiring Defendants to implement a system of tests to assess their employees' knowledge of the education programs discussed in the preceding paragraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

l. requiring Defendants to meaningfully educate all Class members about the threats they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

m. requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

n. such other and further relief as this Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class described above, seeks the following relief:

a. Certifying the class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

b. Judgment in favor of Plaintiff and Class members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

49

CLASS ACTION COMPLAINT

d. An order instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class members;

e. An order requiring Defendants to pay the costs involved in notifying Class members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all triable issues.

DATED: May 28, 2026

Respectfully submitted,

**Freedom Law Firm**

 /s/ *Gerardo Avalos*            .
George Haines, Esq.
Gerardo Avalos, Esq.
8985 S. Eastern Ave., Suite 205
Las Vegas, Nevada 89123

Andrew W. Ferich*
Brian Devall*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com
bdevall@ahdootwolfson.com

*Counsel for Plaintiff and the Proposed Class*

*\*Pro Hac Vice application forthcoming*

50
CLASS ACTION COMPLAINT